## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### TAMPA DIVISION

**ANTHONY LORENZO,**

      **Plaintiff,**

**v.**                                **Case No.  8:05-cv-828-T-30MSS**

**CITY OF TAMPA and**
**STEPHEN PREBICH,**

      **Defendants.**
_____/

### ORDER

THIS CAUSE comes before the Court upon Defendants, City of Tampa and Stephen Prebich's (collectively, **"Defendants"**), Motion for Summary Judgement Pursuant to Rule 56, Federal Rules of Civil Procedure (Dkt. 28), and Plaintiff's Response in opposition to the same (Dkt. 34).

### FACTUAL BACKGROUND

Plaintiff is a member of the Florida Cannabis Action Network ("FCAN"), an organization that advocates the taxation and regulation of cannabis.  On or about October 26, 2002, Plaintiff and other members of FCAN participated in the annual Guavaween parade located in Ybor City, Florida.  The group constructed a float for the parade, which consisted of the following: (i) a jail cell with barbed wire, pot beads, and a sign reading "Political Prisoners," (ii) a hand drawn picture of Uncle Sam urinating on the Constitution, (iii) signs reading "Drug war ending America with the DEA," (iv) references to the Book of Genesis

regarding seed bearing plants being used as food, (v) sign reading "My doctor agrees marijuana is medicine," (vi) the Cannabis Action Network logo, and (vii) a seven foot paper mache marijuana joint.  During the parade, Plaintiff rode on the float dressed as a DEA agent.

Following the parade, Plaintiff and another member of FCAN begun passing out handbills along 7th Avenue in Ybor City.  Plaintiff was still dressed as a DEA agent while he was distributing the handbills.  The handbills contained advertisements for FCAN, the Libertarian Party, and Chachi's Vejutopia, a vegetarian catering company.

Defendant Stephen Prebich (**"Prebich"**), a police officer employed by the City of Tampa Police Department (**"TPD"**), and another TPD police officer observed Plaintiff and the other member of FCAN distributing the handbills.[1]  Prebich and the other officer received complaints that the one of the men distributing handbills was also shouting profanity and upsetting patrons of the parade.  At least one patron asked Prebich and the other officer what they were going to do about it.

Prebich claims he approached Plaintiff and told him he was not allowed to distribute the handbills.[2]  When Plaintiff refused to stop, Prebich attempted to remove the handbills from Plaintiff's possession.  Plaintiff refused to hand over the handbills and pulled away.  Prebich then arrested Plaintiff for violation of Section 6-211 of the City of Tampa Code, and for resisting arrest.  Prebich escorted Plaintiff to a van operated by the Hillsborough County Sheriff's Department (**"HCSD"**).  During the walk to the van, Plaintiff described his

---

[1] Prebich had also observed the FCAN float and its participants during the parade.

[2] In his deposition, Plaintiff stated he did not recall Prebich asking him to stop distributing the handbills.  (Lorenzo depo. at 61).

conversation with Prebich as "friendly."  At no point in time did Prebich physically injure Plaintiff in any way.

Section 6-211 of the City of Tampa Code (the **"OPC Ordinance"**) is an ordinance directed at preventing litter in Ybor City.  The OPC Ordinance prohibits "off-premises canvassing" without a permit, which is defined as "the distribution of information by a person for purposes of soliciting business or customers in the Ybor City Historic District on publicly owned property or public right-of-way in connection with a business."  Sections 6-211 and 6-4, City of Tampa Code.

At the time of the arrest, Prebich was not familiar with the provisions of the OPC Ordinance.  He mistakenly believed that the OPC Ordinance prohibited the distribution of handbills or pamphlets of any kind without a permit.  Prebich claims that before making the arrest, he briefly read the handbills and observed a picture of a marijuana leaf and a restaurant add on one side of the handbill.

After escorting Plaintiff to the van, Prebich turned him over to the Hillsborough County Sheriff's Department.  Plaintiff claims he was then detained in the van until he refused to make room in the van for more people.  Plaintiff claims that Officer Collier, another TPD officer, then pulled him to the ground by his handcuffs and began pulling him by the handcuffs to another van.  Plaintiff then sat on the ground and refused to walk to the other van.  Officer Collier, with the assistance of a few sheriff's officers, then carried Plaintiff to the other van.  Plaintiff claims he was then taken to jail and placed in a holding cell where he caught poison ivy.

As a result of his arrest and subsequent detainment, Plaintiff filed a Complaint alleging a cause of action against Prebich individually for violations under the First and Fourth Amendments to the United States Constitution pursuant to 42 U.S.C. § § 1983. Plaintiff's Complaint also alleges a state cause of action against the City of Tampa for false arrest.

## DISCUSSION

### I.   SUMMARY JUDGMENT STANDARD

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  Id.  Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his favor.  Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the

nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.   LEGAL ANALYSIS

Plaintiff alleges that Prebich lacked probable cause to make the arrest. Probable cause to arrest exists when "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." See Skop v. City of Atlanta, 2007 WL 1288012 at 5 (11th Cir. 2007). This standard is practical and non-technical and is applied in a specific factual context and evaluated using the totality of the circumstances. Id. However, even if it is determined that an officer did not in fact have probable cause, an arrest is still valid if the officer had *arguable*

probable cause.  Id.

Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant *could have believed* that probable cause existed to arrest." Id. (emphasis in original).  An officer may arrest an individual even for a very minor offense committed in his presence without violating the Fourth Amendment. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).  In order to determine whether arguable probable cause exists, the court must consider the information the arresting officer knew or had reason to know at the time of the arrest.  Storck v. City of Coral Springs, 354 F.3d 1307, 1315 (11th Cir. 2003).

Defendant argues that Prebich observed Plaintiff distributing the handbills. Defendants claim that Prebich observed a number of handbills lying on the street, and also observed the advertisement soliciting customers for Chachi's Vejutopia.  Furthermore, Plaintiff was distributing the handbills on 7th Avenue in an area where the City of Tampa had prohibited off-premises canvassing.  When Prebich asked Plaintiff to stop passing out the handbills, Plaintiff refused.  Defendants argue that, when taken together, these facts and circumstances would lead any reasonable officer to believe that Plaintiff had violated the OPC Ordinance.

In response, Plaintiff correctly points out that the OPC Ordinance only applies to commercial solicitations, and does not apply to all "handbills" as Prebich believed at the time of the arrest.  In fact, the word "handbill" is not included in the OPC ordinance.  Plaintiff also notes that the ordinance did not restrict the distribution of materials advocating a political position without a permit.  Plaintiff argues that a reasonable officer would have been aware

of the provisions of the ordinance he was attempting to enforce.  Moreover, Plaintiff argues that a reasonable officer in Prebich's position, taking into account his observation of the FCAN parade float, the dress of the participants, and the clear political message being portrayed, would have been alerted to the political content of the handbills and assessed whether the ordinance was truly being violated.

Plaintiff challenges as illusory Defendants' argument that the inclusion of the Chachi's Vejutopia advertisement on the handbill makes the arrest valid.  In support of this argument, Plaintiff claims that (i) Prebich was not aware the handbill contained the commercial advertisement, (ii) the conduct prohibited by the OPC Ordinance is business solicitation, (iii) the OPC ordinance makes no reference to "handbills" whatsoever, and (iv) Plaintiff's distribution of the handbills was speech protected by the First Amendment.

However, Prebich's lack of knowledge regarding the provisions of the OPC Ordinance does not preclude the existence of arguable probable cause.  As discussed by the Court in United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973)[3], "[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."

The OPC Ordinance precludes "the distribution of information by a person for purposes of soliciting business or customers in the Ybor City Historic District . . . " without

---

[3] The Saunders decision was issued prior to the split of the Fifth and Eleventh Circuits effective October 1, 1981.  The Eleventh Circuit has adopted Fifth Circuit decisions existing prior to this date as precedent.  See Bonner v. City of Prichard, 661 F.2d 1206, 1207-08 (11th Cir. 1981).

a permit.   Sections 6-211 and 6-4, City of Tampa Code.   Prebich observed Plaintiff distributing handbills within the Ybor City Historic District that contained, in part, a commercial advertisement.   While Prebich's subjective belief that the OPC Ordinance precluded the distribution of all handbills was mistaken, he did observe a number of handbills lying on the ground and saw the advertisement on the handbill.   A reasonable officer making these same observations could have believed that probable cause existed to arrest Plaintiff.   Accordingly, in considering the facts present at the time Prebich arrested Plaintiff, the Court concludes that arguable probably cause existed.

Prebich argues he is entitled to qualified immunity on those claims alleged against him individually.   In light of a finding of probable cause, it is unnecessary for this Court to engage in a lengthy discussion of whether Prebich is entitled to qualified immunity. To overcome the qualified immunity defense, Plaintiff had to establish two things: (1) Defendant's conduct violated a statutory or constitutional right; and (2) the violation was "clearly established." Skop, 2007 WL 1288012 at 4.   Plaintiff alleges Prebich violated his Constitutional rights when he arrested and detained Plaintiff without probable cause.   As has already been established, probable cause existed.   As Plaintiff has failed to articulate another Constitutional violation committed by Prebich, this Court finds Prebich is entitled to qualified immunity.

As probable cause existed at the time of Plaintiff's arrest, the existence of probable cause defeats Plaintiff's Section 1983 claims against Prebich, as well as his state claim for false arrest against the City of Tampa.   See Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998) (concluding that a finding of probable cause defeated both federal 1983 and state (false

arrest) claims).  Accordingly, summary judgment is appropriate on these claims.

It is therefore ORDERED AND ADJUDGED that

1.      Defendants, City of Tampa and Stephen Prebich's, Motion for Summary

Judgement Pursuant to Rule 56, Federal Rules of Civil Procedure (Dkt. 28) is **GRANTED**.

2.      Plaintiff's Motion to Continue (Dkt. 40) is **DENIED as moot**.

3.      All pending motions are denied as moot.  The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida on July 11, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-828.msj.frm